UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH EMMANUEL WILSON,

                    Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00544 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Joseph Emmanuel Wilson ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on March 31, 2015.  (Dkt. 6 at 19, 76).[1]  In his application, Plaintiff alleged disability beginning December 19, 2014, due to severe nerve damage in his neck and arm stemming from a gunshot wound in 2012, nerve damage to his right leg causing constant pain and numbness, left leg weakness, psychosis, and schizoaffective disorder.  (*Id.* at 231, 234).  Plaintiff's application was initially denied on July 3, 2015.  (*Id.* at 108-119).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Michael Carr on September 1, 2017, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding over the hearing from the National Hearing Center, Falls Church, Virginia.  (*Id.* at 34-53, 120-140).  On April 3, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 16-33).  Plaintiff requested Appeals Council review; his request was denied on February 26, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-15).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since March 31, 2015, the application date.  (Dkt. 6 at 22).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  status post-gunshot wound to neck with retained bullet fragments; hypertension; schizophrenia; substance abuse; unspecified depressive disorder; and posttraumatic stress disorder.  (*Id.*).  The ALJ did not identify any nonsevere impairments.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 22-24).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, 4.00H, 12.02, 12.03, 12.04, and 12.15 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds, and can only occasionally perform all other postural movements.  [Plaintiff] can frequently reach overhead, push, and pull with the left upper extremity.  [Plaintiff] cannot operate a motor vehicle or heavy machinery or work on conveyor belts or assembly lines.  [Plaintiff] can perform simple, routine tasks and make simple, work-related decisions.  [Plaintiff] can have occasional contact with supervisors and co-workers but no contact with the general public.  [Plaintiff] cannot perform tandem work.

 (*Id.* at 24).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of housekeeping cleaner, folder, and packager.  (*Id.* at 28).  Accordingly, the ALJ found that Plaintiff had not been disabled as defined in the Act at any time since March 31, 2015, the application date.  (*Id.* at 29).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ erred in not finding Plaintiff's learning disability and "apparent borderline intellectual functioning" to be severe impairments at step two and (2) the ALJ's RFC finding failed to adequately account for Plaintiff's difficulties in making decisions and managing stress.  (*See* Dkt. 8-1).  The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A.   Step Two Determination

At step two of the disability analysis, the ALJ determines whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  A medically determinable impairment is one that "result[s] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.921.  "The plaintiff bears the burden of establishing that he has a medically determinable impairment, which 'can be shown by medically acceptable clinical and laboratory diagnostic techniques[ ]' from an 'acceptable medical source.'"  *Lorusso v. Saul*, No. 3:19 CV 126 (RMS), 2020 WL 813595, at *9 (D. Conn. Feb. 19, 2020) (quoting 20 C.F.R. § 416.921).

- 6 -

Here, Plaintiff points to school records that he claims support the conclusion he has a learning disability. (*See* Dkt. 8-1 at 6, 15-16). However, these school records are for an individual named Joseph Wilson who was born on August 5, 1988, was 15 years old in April and May of 2004, and is described as "Caucasian." (Dkt. 6 at 207-230). Plaintiff, on the other hand, was born on September 10, 1991, was 23 years old in December 2014, and is described as "African-American" in his medical records. (*Id*. at 27, 77, 191, 231, 470). It thus appears that these are not Plaintiff's school records, but are instead records for a different, older individual who is also named Joseph Wilson.

In any event, the school records at issue are, as the ALJ noted at the hearing, quite remote in time from Plaintiff's alleged onset of disability. (Dkt. 6 at 48). Further, while the school records do indicate that the individual to whom they pertain was classified as learning disabled for educational purposes, they also reflect IQ testing within the average range and note that the student in question was "on grade level and above in most academic areas with the exception of math calculations" and "fairing well academically with a 93% in English, 91% in Global 10, 86% in Algebra and a 75% in Environmental Science." (*Id*. at 207-08). The Court does not find that these school records required the ALJ to conclude that Plaintiff had a medically determinable impairment of a learning disability.

With respect to the claim that Plaintiff has a medically determinable impairment of borderline intellectual functioning, Plaintiff relies on an intelligence evaluation performed by consultative examiner Dr. Sandra Jensen on June 28, 2011. (Dkt. 6 at 465-69). Upon testing, Plaintiff had a verbal comprehension IQ of 72, a perceptual reasoning IQ of 77, a working memory IQ of 86, a processing speed IQ of 71, and a full scale IQ of 71. (*Id*. at

467).  Dr. Jensen opined that Plaintiff's true verbal comprehension score was likely higher than reflected by the evaluation and concluded that Plaintiff was "currently working in the borderline range of intellectual functioning."  (*Id.*).  The ALJ afforded Dr. Jensen's assessment of Plaintiff little weight, since it was rendered prior to the alleged onset date and did "not provide a picture of [Plaintiff's] functional limitations or abilities during the relevant period."  (*Id.* at 27).  The ALJ further afforded "significant weight" to the opinion of consultative examiner Dr. Janine Ippolito, who examined Plaintiff on June 12, 2015, and concluded that his intellectual functioning was "average to below average."[2]  (*Id.* at 26, 330).

On this record, the ALJ did not err in concluding that Plaintiff had not satisfied his burden of demonstrating a medically determinable impairment of borderline intellectual functioning.  There was a conflict in the medical evidence between Dr. Jensen's and Dr. Ippolito's assessments of Plaintiff's intellectual functioning, and "[i]t is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'"  *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Moreover, it was appropriate for the ALJ to credit Dr. Ippolito's opinion, which was rendered during the period of claimed disability and provided a more

---

[2]      The term "borderline intellectual functioning" does not encompass all individuals with below average intelligence, but instead refers only to those "who function on the border between normal intellectual functioning and intellectual disability, between 1 and 2 standard deviations below the mean on the normal curve of the distribution of intelligence[.]"  *Francis o/b/o A.B. v. Saul*, No. CV 18-13862, 2020 WL 1503540, at *6 (E.D. La. Mar. 30, 2020) (citation omitted).  In other words, Dr. Ippolito's conclusion that Plaintiff had "average to below average" intellectual functioning is not a finding of borderline intellectual functioning.

recent picture of Plaintiff's status.

Further, even accepting Plaintiff's argument that the ALJ should have found at step two that he had borderline intellectual functioning and that it was a severe impairment, any such error in this regard was harmless. Dr. Jensen is the only medical source of record who assessed Plaintiff with borderline intellectual functioning. However, the ALJ's RFC assessment is fully consistent with Dr. Jensen's opinion regarding Plaintiff's functional capabilities. Dr. Jensen opined that Plaintiff was "able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, [and] perform complex tasks with supervision within normal limits," but that his "ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress may be mildly to moderately impaired due to very poor socialization." (Dkt. 6 at 462-63). The ALJ's limitation of Plaintiff to simple, routine tasks and simple decision-making in a non-assembly line setting, as well as to only occasional contact with supervisors and coworkers and no contact with the general public, accounts for Dr. Jensen's opinion in its entirety. *See*, *e.g., Lewis v. Comm'r of Soc. Sec.*, No. 1:18-CV-150-DB, 2019 WL 3321896, at *5 (W.D.N.Y. July 24, 2019) ("It is well settled that a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning, including stress."); *Reyes v. Colvin*, No. 14-CV-734-JTC, 2016 WL 56267, at *6 (W.D.N.Y. Jan. 5, 2016) (finding limitation to "simple work with only occasional interaction with the public, co-workers and supervisors" accounted for opinion that the plaintiff had "moderate limitations in the ability to perform complex tasks, mild limitation in making appropriate decisions, and moderate

limitation in the ability to relate adequately with others and deal with stress"). The ALJ thus did not commit any reversible error at step two. *See Anthony v. Colvin*, No. 1:14-CV-0848 DNH/CFH, 2015 WL 5772980, at *16 (N.D.N.Y. Sept. 30, 2015) (finding no reversible error where the ALJ did not explicitly discuss the plaintiff's "ADD/ADHD" at step two, but nonetheless fully accounted for the plaintiff's "limitations in concentration or attention by limiting plaintiff to simple, unskilled work, involving simple work-related decisions with only an occasional ability to make complex decisions and perform complex tasks").[3]

## B.    <u>Assessment of Plaintiff's Ability to Deal with Stress and Make Decisions</u>

Plaintiff also argues that the ALJ's RFC finding fails to appropriately account for Plaintiff's limitations in dealing with stress and making decisions. The Court disagrees. Plaintiff is correct that Dr. Ippolito opined he had a moderate limitation in managing stress and a moderate to marked limitation in making decisions. (Dkt. 6 at 330). However, notwithstanding those limitations, Dr. Ippolito further opined that Plaintiff was able to follow and understand simple directions and instructions and perform simple tasks independently while maintaining attention and concentration. (*Id.*). Dr. Ippolito's medical opinion is thus fully consistent with the ALJ's conclusion that Plaintiff's difficulties in

---

[3]       Plaintiff's citation to *Faison v. Berryhill*, No. 6:16-CV-06055(MAT), 2017 WL 3381055 (W.D.N.Y. Aug. 5, 2017), is inapposite. In *Faison*, the record was such that it was "not clear whether the ALJ would have arrived at the same conclusion regarding [the plaintiff's] residual functional capacity" had he made a different severity determination. *Id.* at *3 (citation omitted). By contrast, in this case, as discussed above, the ALJ's RFC finding included every limitation assessed by Dr. Jensen. *Faison* does not, as Plaintiff suggests, stand for the proposition that a step two error involving borderline intellectual functioning can never be harmless; to the contrary, the court in *Faison* remanded only after considering whether the error was harmless. *Id.* at *4.

managing stress and making decisions would not preclude him from performing simple work in a non-assembly line setting.  *See Hill v. Comm'r of Soc. Sec.*, No. 18-CV-1161L, 2020 WL 836386, at *4 (W.D.N.Y. Feb. 20, 2020) (an RFC finding limiting a claimant to "performing simple, routine and repetitive tasks, and simple work-related decisions, and to only occasional interaction with coworkers and the public . . . adequately accommodate[s] marked limitations in a claimant's ability to adapt or manage oneself" as well as "moderate to marked stress-related limitations").  The ALJ's RFC finding accounts for the limitations assessed by Dr. Ippolito and accordingly, neither reversal nor remand on this basis is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        August 3, 2020
              Rochester, New York